IN THE MATTER OF THE APPLICATION OF THE BOSTON, HOOSAC TUNNEL & WESTERN RAILWAY COMPANY, APPELLANT, TO ACQUIRE LANDS OF THE TROY & BOSTON RAILROAD COMPANY, RESPONDENT.

*Eminent domain—damages to be paid by a railroad company—they are to be determined by the detriment occasioned to the owner, and not by the value of the land to the company.*

The road of the Troy & Boston R. R. Co. originally crossed the Hoosac river at two points. Thereafter that company bought certain land, and so turned the course of the river as to leave their road entirely on its east side. By so doing, they left a piece of land between the track and the old channel, to which there was no access either by a public or a private road. Another railroad company having applied to take a portion of this land, commissioners to appraise the damages to be awarded therefor were appointed, and a hearing had, at which witnesses called by the petitioners testified that $50 an acre was a liberal price, while the president of the Troy & Boston R. R. Co. testified that it was worth $12,000 for railroad purposes. The land was not however of that value to the Troy & Boston R. R., their tracks having already been constructed on adjoining land. The commissioners fixed the damages to be paid by the petitioners at $5,000, stating that in arriving at that sum they included in it the value of the land, as situated, for general railway purposes.

*Held*, on appeal by the petitioner, that the commissioners erred in so doing. That the damages to be paid were to be determined by the detriment occasioned to the owner of the land taken, and that the amount thereof should be neither increased or diminished by the fact that the land to be taken was peculiarly well or ill adapted to the uses of a railroad.

APPEAL from the award of commissioners appointed to appraise the value of certain lands, the property of the Troy & Boston Railroad Company, which the appellant sought to acquire by virtue of the provisions of the general railroad act.

The Troy & Boston Railroad runs from Troy to the Hoosac Tunnel, and the Boston, Hoosac Tunnel & Western Railway from Mechanicville to the tunnel, and the routes of the two roads are substantially parallel from Schaghticoke to the tunnel. At the point where the land lies which was taken in this proceeding, the line of the Troy & Boston road crossed, at two points, the former bed of the Hoosac river. In order to avoid the necessity of building two expensive bridges, the Troy & Boston road turned the

course of the Hoosac river at this point, so as to build the road wholly on the east side of the river, and for the purpose of so doing purchased the land taken in this proceeding, and has held it ever since. The appellant company now desires to take a portion of this land for the uses of its own railroad. It was claimed that, by reason of the change of the course of the river, made by the respondent company, the petitioner would thereby be enabled to build its road upon a fill across the old channel of the river and to dispense with the necessity of building two bridges, one four hundred feet long, and the other of the length of two hundred feet.

The land in question, for other than railroad purposes, was of nominal value. Evidence was given tending to show that for railroad purposes this land was worth $12,000, and that it was worth $10,000 or $12,000 more for such purposes than it would have been had not the Troy & Boston road turned the river by their embankment at this point. . The commissioners made an award of $5,000. In compliance with an order of the Special Term, the commissioners stated that in arriving at the said compensation they included the value of the land for railroad purposes, and excluded any amount for the value of the use of it to the respondent for their railroad purposes, except that they included what they deemed a proper amount for the value of the land for general railroad purposes.

*James Gibson* and *E. W. Paige*, for the appellant.

*Esek Cowen*, for the respondent.

LEARNED, P. J.:

The commissioners in this case awarded as compensation to the Troy & Boston Railroad Company, for land to be taken by the Boston, Hoosac Tunnel & Western Railroad Company, the sum of $5,000. The matter was sent back to them to state certain matters, as to the mode at which they arrived at this amount. And by a further report they stated that, in arriving at said compensation, they did include the value of the real estate for railroad purposes; that they excluded the value of the use of the land to the Troy & Boston Railroad Company, except that they included what

they deemed a proper amount for the value of the land for general railroad purposes.

The land taken was a strip about one hundred feet in width and about three acres in size. It had never been used by the respondent or any one else, and was unavailable for purposes of cultivation. The Troy & Boston Railroad at this place crossed the old channel of the Hoosac river at the two points. In order to turn the river the Troy & Boston Railroad Company bought this land. They then turned the course of the river, so as to build their road wholly on its east side. By doing this they left what was called the "Island," a piece of land between their track and the bend of the old channel. The application to take the land in question, a part of that island, had been opposed by the Troy & Boston Company; and the court had found that the land proposed to be taken was not necessary to, or required by, the respondent, for the purposes of its incorporation.

On the hearing before the commissioners, a witness, on behalf of the petitioners, testified that $50 an acre was a liberal price. On the part of the respondents, their president testified that the value of the land was $12,000. He explained, on cross-examination, that he meant that this was its value to the Troy & Boston Railroad Company, for the purposes of its incorporation; and that there was no access to the land by public or private road.

The question on this appeal is whether or not the commissioners made up the amount of compensation on a correct principle. It is not disputed that $50 an acre is a full value for this land as farming land. But it is urged by the respondents that, when part of the land of an existing railroad company is taken by another road, and the value of the land has been greatly enhanced for railroad purposes by improvements of the existing railroad, the new road must pay its fair value for railroad purposes.

In considering this question, we must first notice that it has been already found by the court that the piece of land to be taken is not necessary to, or required by respondents for their own purposes. No special value to them can therefore come into account, because they do not need this land. It is undoubtedly true that, if the respondents had not constructed their track upon an embankment

which cut off the bend of the river, then the track of the petitioners, instead of going over a dry channel of the former bed, would have had to cross the river twice, by bridges or otherwise. And it is really because the land which the petitioners desire to take, has thus been made available to them, at less expense than it would otherwise have been, that the respondents insist upon the rate of compensation which has been allowed to them.

The situation of hills and streams often determines, as a matter of necessity, where a public road must be built. If it must go through some narrow pass, where the land is owned by one person, he must be made to give up his land for the public benefit. All that he can have is compensation. Now, if the railroad company are to pay what the piece of land is worth " for railroad purposes," and if the road must be built through that pass, then they must pay any sum which the prospects of a successful railroad will warrant. For the land would be worth " for railroad purposes " any sum, however large, which would not actually prevent the building of the road. Such a rule would do away with nearly all the benefit of the compulsory power of eminent domain. It would be giving more than compensation.

The doctrine laid down in *Black River & M. R. R. Co.* v. *Barnard* (16 N. Y. Sup'm Ct., 104), applies exactly to the present case. It is the detriment to the owner for which he is to be compensated. When that has been ascertained, he is not to be paid more, because the land is peculiarly adapted to the use of a railroad. If such a rule were to be applied, then the contrary would follow. That is, the railroad company would be entitled to take the land for less than its compensatory value to the owner, upon showing that it was not adapted to the use of a railroad, and that the construction of the track over it would be unusually expensive.

The finding of the commissioners that this land is worth $5,000 for railroad purposes, cannot mean that it was of that value to the respondents; because they do not require it at all. It seems to mean that the petitioners are obliged to have the land, and would better pay $5,000 than not build their road. That is unjust.

Possibly it may mean that the respondents, some time ago, spent a large amount in constructing their track, and by doing this made

the channel bare, and thus rendered it cheaper for the petitioner to build their track than it would otherwise have been; and that, for this reason, the petitioners ought to contribute to the expense paid many years ago. But this is not reasonable. The land which is to be taken is of no value, practically, to the respondents. After building their track, if they had sold the piece of land for which they had no use, it would not have brought over $50 per acre. And, after such a sale, if the petitioners had attempted to acquire part of it from such purchaser, by proceedings of this nature, they would not have been required to pay such purchaser for the expense laid out by the respondents in building their track. Nor should the petitioners pay these respondents for that expense.

The appraisal and report and order of confirmation must be reversed, and the matter sent back to the Special Term to appoint new commissioners.

Present—LEARNED, P. J., BOCKES and MARTIN, JJ.

Award of commissioners reversed; matter sent to Special Term to appoint new commissioners; costs to abide event.